# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**LORENZO FAIN, #211887**                                                                 **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 5:22-cv-83-DCB-LGI**

**CAPTAIN JUSTIN GREEN,**
**SERGEANT RODERICK LOGAN,**
**and JACOB CHILDDRESS**                                                              **DEFENDANTS**

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant Green and Logan's Motion [36] for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Motion [36] for Summary Judgment be granted and Plaintiff's claims against Defendants be dismissed without prejudice.

## I. BACKGROUND

*Pro se* Plaintiff Lorenzo Fain ("Plaintiff") is a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"), incarcerated at the East Mississippi Correctional Facility in Meridian, Mississippi. Plaintiff is proceeding *in forma pauperis*, subject to the Prison Litigation Reform Act ("PLRA"), and he brings this suit pursuant to 42 U.S.C. § 1983. *See* Compl. [1]; Order [10]. Plaintiff complains about the conditions of his previous confinement at Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi.

The named Defendants are Justin Green, Captain at WCCF; Roderick Logan, Sergeant at WCCF; and Jacob Childdress, a former employee at WCCF. *See* Order [29]; Order [26]. Plaintiff's claims presented in his Complaint [1] and Response [17] are summarized below.

Plaintiff claims that on January 19, 2022, at WCCF, when Captain Green was putting handcuffs on him, Green grabbed Plaintiff's butt. Compl. [1] at 4; Resp. [17] at 2. According to Plaintiff, Green then spoke in vulgar terms to Plaintiff and about Plaintiff as he escorted Plaintiff to the shower. *Id*. Plaintiff further claims that on April 21, 2022, all three Defendants "took everybody outside to the bull pins (sic) for haircuts" and Captain Green told him to "take the keys so they can beat me to sleep." Resp. [17] at 2.

Next, Plaintiff claims that on "April 27, 2022 at 10:55 AM," Captain Green closed the tray flap on his cell door for three days without feeding him. *Id*. at 3. Lastly, Plaintiff alleges that two officers, who are not named as Defendants, "put the cell[ ] door keys" in his hand and told him to kill another inmate. *Id*. When Plaintiff refused, he claims the officers lied to the emergency response team to make it look "like I took the keys from them" which put Plaintiff's life in danger. *Id*.; Compl. [1] at 4.

Plaintiff submitted this civil action to the Northern District of Mississippi while incarcerated at WCCF. It was filed on that Court's docket on September 1, 2022, and transferred to this Court on September 27, 2022. *See* Order [7]. As

relief, Plaintiff "would like the Court to help [him] get some relief" from the alleged conditions at WCCF.  Compl. [1] at 5.

On June 7, 2023, Defendants Green and Logan filed a Motion [36] for Summary Judgment, arguing Plaintiff failed to properly exhaust his available administrative remedies prior to filing this lawsuit. Plaintiff did not file a response, and the time for doing so has expired.

## II. DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  All facts and inferences are construed in the light most favorable to the non-moving party, *see Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010), "but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

Summary judgment is routinely utilized to decide if a prisoner completed pre-filing exhaustion in conditions-of-confinement cases. *See, e.g.*, *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (finding "there is no genuine issue of material fact as to whether Wilson exhausted his administrative remedies, and summary judgment was appropriate"); *Dillon*, 596 F.3d at 272 ("[E]xhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."). If defendants meet their "initial summary

3

judgment burden of showing that there [is] no genuine issue of material fact regarding exhaustion" and the prisoner-plaintiff "fail[s] to come forward with specific facts showing there [is] a genuine dispute as to exhaustion, the district court [is] required to dismiss his claims." *Jackson v. Hall*, 763 F. App'x 376, 376-77 (5th Cir. 2019) (affirming summary judgment dismissal for failure to exhaust administrative remedies, noting that district court did not err by ruling on prisoner's claims in the context of summary judgment without allowing discovery or conducting an evidentiary hearing).

B.  The PLRA's Exhaustion Requirement

The PLRA provides that an inmate may not sue under federal law until exhausting available administrative remedies. 42 U.S.C. § 1997e(a). The exhaustion requirement (1) "give[s] an agency an opportunity to correct its own mistakes . . . before it is haled into federal court" and (2) it permits "claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court." *Johnson v. Ford*, 361 F. App'x 752, 755 (5th Cir. 2008) (internal quotation marks and citations omitted) (discussing purposes of § 1997e(a)). It is well-settled that a prisoner must complete the exhaustion of available administrative remedies prior to filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("Pre-filing exhaustion is mandatory").

Exhaustion under the PLRA is an affirmative defense, and the burden is on Defendants to demonstrate that Plaintiff failed to exhaust available

administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). To meet their burden, Defendants "must establish" without doubt "all of the essential elements of the defense of exhaustion." *Wilson*, 776 F.3d at 299 (citation omitted).

The PLRA dictates proper exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules– rules that are defined not by the PLRA, but by the prison grievance process itself." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Jones*, 549 U.S. at 218); *see also Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them."). Finally, the exhaustion requirement is satisfied only if the prisoner pursues the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

C.  MDOC's Administrative Remedy Program

Initially, the Court notes that MDOC's Administrative Remedy Program ("ARP") is detailed in Chapter VIII of the Inmate Handbook. The moving Defendants filed a copy of the relevant Inmate Handbook as an Exhibit [36-2] to their Motion [36] for Summary Judgment.[1]

---

[1] Since the PLRA "requires that administrative remedies be exhausted before the filing of a § 1983 suit," *see Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir.1998), the rules governing MDOC's Administrative Remedy Program "at the time prior to the filing of [Plaintiff's] suit" apply. *Wilson,* 776 F.3d at 299.

5

MDOC implemented the Administrative Remedy Program statewide under the authority of Miss. Code Ann. § 47-5-801, and the two-step version of the program was approved in *Gates v. Barbour*, No. 4:71-cv-6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010). The program is available for use by "all inmates committed to the custody of MDOC" in "all" institutions and facilities. [36-2] at 17.[2]

The ARP is a two-step process through which an inmate may present grievances relating to his incarceration. *See id.* at 17-18; *Jackson*, 763 F. App'x at 377. To utilize the ARP,

> [a]n inmate must file a grievance within 30 days of the complained of incident. The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two. If the inmate disagrees with the step two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018) (internal citations omitted). The legal-claims adjudicator may also reject the grievance, meaning the grievance is not forwarded to the appropriate official for a step one response but instead the grievance is returned to the inmate. [36-2] at 17 (listing reasons for rejection). Written notice of acceptance into the program or rejection is provided to the inmate. *Id.* at 18.

The program also details how an inmate may proceed with a complaint that the inmate believes involves "sensitive issues." *Id.* The inmate may submit

---

[2] All citations to the Inmate Handbook [36-2] reflect CM/ECF pagination.

his sensitive issue grievance directly to the ARP Director as opposed to filing it at the institution or facility. *Id*. Otherwise, the process remains the same. An MDOC inmate completes the exhaustion of his administrative remedies when he proceeds through both steps of the ARP process. *See Wilson*, 776 F.3d at 302 (discussing MDOC's ARP process).

D.   Plaintiff's Filings with the Administrative Remedy Program

In support of their Motion for Summary Judgment, Defendants submit an Affidavit from Janice Williams, the ARP Coordinator and custodian of the ARP records at WCCF. *See* [36-1] at 1-2. Williams outlines the ARP process and states that she has "reviewed the records and information maintained in the ARP files at WCCF and on MDOC's Offendertrak database regarding grievances submitted" by Plaintiff "pertaining to his incarceration at WCCF." *Id*. at 2. A complete copy of those records is attached to her Affidavit. *Id*. at 3-12. Plaintiff's submissions are detailed below.

1. Letter titled "ARP" dated May 2, 2022, stamped received May 4, 2022

Plaintiff submitted a letter labeled "ARP" containing the allegations he asserts in this Complaint [1]; the letter is stamped received on May 4, 2022. [36-1] at 4. On this same date, Richard Pennington, the Director of MDOC's Administrative Remedy Program, sent a letter to Plaintiff stating that he forwarded Plaintiff's letter to the Chief of the Corrections Investigation Division ("CID") to "conduct an investigation into [Plaintiff's] allegations." *Id*. at 3. In the letter, the ARP Director also advises Plaintiff that if he is "not satisfied with CID's

results at the completion of their investigation," he may submit his "complaint, along with proof of completion, to the ARP office at [Plaintiff's] housing facility for consideration." *Id.* The records show that on May 5, 2022, Plaintiff signed a form acknowledging that he received a letter from the ARP dated May 4, 2022 regarding "CID." *Id.* at 7 (WCCF Grievance Coordinator Williams signed the form as a witness).

2. Untitled letter dated May 15, 2022, stamped received May 16, 2022

The ARP records also contain an unsigned and untitled letter, dated May 15, 2022, that is stamped received May 16, 2022. In this document, Plaintiff states that he has not gotten a response to his first "ARP letter" and Plaintiff repeats his complaints. [36-1] at 5. Plaintiff does not title or label this document with "ARP" as he did with his other two documents submitted to the program. The ARP records do not reflect any further filings concerning this letter.

3. Letter titled "A.R.P." stamped received October 25, 2022

Plaintiff does not sign or date this letter, but it is stamped as received on October 25, 2022. *Id.* at 8. In this document, Plaintiff refers to his "on[-]going lawsuit" against Captain Green and provides the case number for this civil action. *Id.* On the same date, Grievance Coordinator Williams issued a memo to Plaintiff with detailed instructions on "how to enter the ARP process." *Id.* at 11.[3]

---

[3] The records also contain a handwritten page labeled "Sent To Other Facility" listing inmate names, prison numbers, dates, and facilities. [36-1] at 10. Plaintiff's name and inmate number are on this list under the date "11/2/22" with "(Letters)" and "EMCF" written next to Plaintiff's name. *Id.* It appears this record is noting Plaintiff's transfer from WCCF to the East Mississippi Correctional

8

### 4. Plaintiff's complaints outside of the ARP

Plaintiff states that in February of 2022, he began writing to CID and the Warden regarding the issues he presents in his Complaint and that he spoke to both the Warden and a CID official "face to face 10 times" regarding his complaints. Compl. [1] at 3. Plaintiff also references these same letters and conversations with the Warden and a CID official in his grievance dated May 2, 2022. [36-1] at 4.

### E. Discussion

After review of Plaintiff's Complaint [1] and Response [17], along with the ARP records [36-1], it is clear that Plaintiff did not complete MDOC's ARP process for the claims he presents in this civil action. As discussed below, Plaintiff's actions do not demonstrate compliance with the PLRA's mandatory exhaustion requirement.

The Fifth Circuit takes a "strict approach" to the PLRA's exhaustion requirement, which includes proceeding through both steps of the ARP process, "even if MDOC fail[s] to respond at either of the steps." *Wilson,* 776 F. 3d at 299-302 (affirming summary judgment for failure to exhaust, finding inmate only completed step one of MDOC's ARP process and then filed suit alleging grievances

---

Facility ("EMCF") which coincides with a Letter [12] the Court received from Plaintiff on November 7, 2022, with a return address of EMCF.

were not responded to in a timely fashion). As detailed in the Inmate Handbook, "[u]nless an extension has been granted, no more than 90 days shall elapse from beginning the process to ending the process." [36-2] at 18. The program further provides that, "expiration of response time limits without receipt of a written response shall entitle the inmate to move on to the next step in the process." *Id*. As explained by the Fifth Circuit,

> a prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process. Thus, it is only if the prison fails to respond at the last step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.

*Wilson*, 776 F.3d at 301. These same rules apply to any sensitive issue grievances. When a prisoner does not receive a response to a sensitive issue grievance, he is "entitled to move on to the next step in the process, not to proceed directly to federal court." *McLemore v. Fisher*, No. 1:16-cv-20-LG-RHW, 2016 WL 4004669, at *3 (S.D. Miss. June 29, 2016) (finding "sensitive ARP was, at best, step one" of MDOC's administrative remedy program), *report and recommendation adopted by* 2016 WL 3983693, at *1 (S.D. Miss. July 25, 2016).

    1. <u>Plaintiff's Letters to the ARP fail to demonstrate exhaustion</u>

Plaintiff submitted two letters to the ARP in May of 2022, prior to filing this civil action, and one additional letter on October 25, 2022, after the filing of this civil action. First, it is without question that the unsigned grievance letter filed in October that references this case and case number fails to satisfy the PLRA's *pre*-filing exhaustion requirement.

Second, Plaintiff's initial letter or grievance submitted to the program in May of 2022 fails to demonstrate completion of MDOC's two-step ARP process. Plaintiff's first grievance containing the allegations he asserts in his Complaint [1] was forwarded by ARP Director Pennington to the Chief of CID for an investigation. Pennington also informed Plaintiff, in writing, of this action and provided specific instructions on how Plaintiff may submit his complaint if he is not satisfied with the results of the investigation. There is no evidence that Plaintiff followed the directions provided in Pennington's response.

Furthermore, Pennington's response to Plaintiff's grievance does not appear to be outright acceptance into the program. Instead, at most, Pennington's response is an acceptance contingent on the completion of CID's investigation. However, even if the Court liberally construes Pennington's response as notice of acceptance into the program, there is nothing in the ARP records or Plaintiff's filings showing that a first-step response issued. At that point, Plaintiff was required to appeal his grievance to the step-two level. *See* [36-2] at 18 ("expiration of response time limits without receipt of a written response shall entitle the inmate to move on to the next step in the process"); *Wilson*, 776 F.3d at 302 (finding prisoner is required to proceed through both steps of the ARP process, "even if MDOC fail[s] to respond at either of the steps"). Plaintiff's initial letter—construed as a grievance to the program—fails to demonstrate completion of MDOC's two-step ARP process.

Third, Plaintiff's subsequent May letter also fails to demonstrate exhaustion of Plaintiff's administrative remedies. The ARP records reveal an unsigned letter, received 11 days after Plaintiff's initial letter or grievance was received. In this letter, Plaintiff states that he has not gotten a response to his first "ARP letter" and repeats his complaints. [36-1] at 5. Plaintiff does not title or label this document with "ARP" as he did with his other two documents submitted to the program. This letter does not appear to be an attempt to file a grievance with the program, but even *if* the letter is treated as an initial grievance, there is no response from the ARP found in Plaintiff's ARP records or in Plaintiff's filings. Once again, Plaintiff is required to appeal to step-two of the program even if the program fails to issue a first-step response. *See Wilson*, 776 F.3d at 302. There is no evidence showing Plaintiff attempted to appeal the lack of a response to this letter or grievance at the step-two level.

Furthermore, it does not appear that this second letter is Plaintiff's attempt at a step-two appeal of an adverse decision to his first grievance because Plaintiff plainly states in this letter that he has not gotten a response to his "first ARP letter." [36-1] at 5. Even if this second letter is Plaintiff's attempt to move on to the next step in the program for lack of a response to his first grievance, it is premature. Plaintiff submitted this second letter 11 days after he submitted his first grievance, which fails to meet the prerequisite "expiration of response time limits" required for an inmate to proceed to the next step based on the program's failure to respond. [36-2] at 18; *see also Wilson*, 776 F.3d at 302 (noting the "outer

time limit" for how long MDOC's administrative remedy program can take is 90 days and finding prisoner's lawsuit filed prior to expiration of time limits and based on program's failure to respond at step-two level could not be properly exhausted).  Plaintiff may not satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 84; *see Lane v. Harris Cty. Med. Dep't,* 266 F. App'x 315, 315 (5th Cir. 2008) (finding proper exhaustion under PLRA means, in part, that prisoner "must [ ] comply with all administrative deadlines and procedural rules"). Based on the ARP records detailed above, there is no genuine dispute as to Plaintiff's failure to complete the exhaustion of his administrative remedies prior to filing this Complaint.

    2. <u>An administrative remedy was available to Plaintiff</u>

A limited exception to the exhaustion requirement exists if administrative remedies are not available.  *See Ross v. Blake*, 578 U.S. 632, 642-44 (2016) (explaining only exception comes from the statute's use of the word "available" and setting forth three kinds of circumstances in which a prison grievance system is unavailable or not capable of use to obtain relief).  As previously noted, MDOC's Administrative Remedy Program is available for use by "all inmates committed to the custody of MDOC" in "all" institutions and facilities.  *See* [36-2] at 17.

Plaintiff has not responded to the Motion [36] for Summary Judgment and he provides mixed responses to the form questions in his Complaint [1] regarding exhaustion of his administrative remedies.  Compl. [1] at 2-4.  For example,

13

Plaintiff states that he did not use the grievance procedure because ARP forms or grievance forms were not available at WCCF. *Id.* at 3-4. On one hand, this appears to be Plaintiff admitting that he did not exhaust his administrative remedies. On the other hand, Plaintiff's may be claiming an administrative remedy was unavailable because WCCF did not have ARP forms. *Id.* at 4. Viewing Plaintiff's responses in the light most favorable to him, Plaintiff is claiming the lack of forms caused the administrative remedy program to be unavailable.

Plaintiff's allegation that ARP forms were not available at WCCF falls short of making the administrative remedy process incapable of use or unavailable within the meaning of the PLRA. *See Ross,* 578 U.S. at 642-44. Unlike the federal prison system, MDOC's administrative remedy program does *not* require the use of any specific form to enter the process.[4] Under the MDOC program, an inmate begins the process by submitting "original letters or request to ARP" in writing, that "clearly indicate the terminology 'this is a request for administrative remedy.'" [36-2] at 17. There is no requirement that a prisoner's initial letter, grievance, or complaint appear on a certain form. However, when the first-step response issues, forms are provided to the prisoner to appeal to the next step if he

---

[4] In *Aceves v. Swanson*, the Fifth Circuit recognized that regulations for the Bureau of Prisons' administrative remedy program require a federal prisoner to submit his claims on specific forms and found that when officials refused to provide the federal prisoner with the forms needed to exhaust his administrative remedies, the remedy was not available. 75 F. App'x 295, 296 (5th Cir. 2003) (citing C.F.R. §§542.14(a), 542.15(b)). Here, Plaintiff's submissions to the ARP, at best, were initial complaints that were not required to be on a specific form. Plaintiff's lack of access to "ARP forms" did not make the program incapable of use or unavailable.

14

remains unsatisfied and a prisoner is required to use the "ARP envelope that is furnished" with the step-one response to "continue the procedure." *Id*.

Plaintiff was able to submit letters to the ARP, and officials with the program responded, in writing, to both of Plaintiff's grievance letters that were titled "ARP." The first letter was immediately forwarded to CID for an investigation. Both responses from the ARP officials provided Plaintiff with specific written instructions on how to advance his claims through the ARP process. Yet, Plaintiff took no further action.

Neither response by ARP officials rejected Plaintiff's letters or grievances because they were not on a specific form. Plaintiff's initial May grievance was acted on by the statewide ARP Director and Plaintiff was informed to submit his grievance at the completion of the CID investigation. There is no evidence that Plaintiff followed the directions provided in Pennington's response. As explained above, Pennington's response appears to be an acceptance into the program contingent upon completion of the CID investigation. It certainly is not a rejection of Plaintiff's grievance because it was not presented on a certain form. Nor is it a rejection for Plaintiff's failure to meet any procedural requirement of the program. Likewise, it can hardly be viewed as an effort to "thwart [Plaintiff] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." *Ross,* 578 U.S. at 644 (discussing circumstances that may deem existing administrative remedy programs unavailable).

15

The next response from an ARP official is related to the October grievance, which post-dates the filing of this case. In any event, this response does not reject Plaintiff's grievance because it is not on a specific form; instead it refers to Plaintiff not signing his grievance and failing to specify the relief he seeks. The response also includes easy to follow "guidelines" to serve as a "checklist" for Plaintiff to use prior to resubmitting his grievance to "ensure" the request is "accepted and handled by the Administrative Remedy Program." [36-1] at 11.

There simply is no evidence that a lack of forms prevented Plaintiff from pursuing his complaints with the administrative remedy program. *See, e.g.*, *Putnam v. Traylor*, 633 F. App'x 600, 601 (5th Cir. 2016) (finding inmate's claim that jailers ignored his multiple requests for grievance forms did not excuse exhaustion requirement nor did it deem administrative remedies unavailable because inmate used grievance forms during relevant time period for different purpose). Accepting as true Plaintiff's assertion that grievance forms or ARP forms were not available at WCCF, does not render MDOC's statewide administrative remedy program unavailable. Based on the foregoing, there is no genuine dispute as to the availability of Plaintiff's administrative remedies prior to filing this Complaint.

  3. <u>Plaintiff's conversations and correspondence with the Warden and a CID official fail to demonstrate exhaustion</u>

Plaintiff's conversations and correspondence outside of the program do not demonstrate exhaustion. Plaintiff states that in February of 2022, he began

writing to CID and the Warden regarding the issues he presents in his Complaint and that he spoke to both the Warden and a CID official "face to face 10 times" regarding his complaints. Compl. [1] at 3. Plaintiff also references these same letters and conversations with the Warden and a CID official in his grievance dated May 2, 2022. [36-1] at 4. Plaintiff clearly sent these letters to the Warden and CID official *prior* to submitting his first grievance to the program. Therefore, these letters cannot reasonably be viewed as an attempt by Plaintiff to appeal any of his grievances. Likewise, it is chronologically impossible for the letters to be an attempt to comply with the instructions provided in the May 4, 2022 letter from Pennington in response to Plaintiff's first grievance.

Furthermore, informal verbal or written complaints to prison officials are not proper exhaustion and fail to satisfy the PLRA's exhaustion requirement. *See Nelson v. Sollie,* No. 22-60461, 2023 WL 3863345, at *1 (5th Cir. June 7, 2023) (rejecting inmate's assertion that he exhausted his administrative remedies when he "grieved verbally to officers" because program requires inmate to submit written grievance); *Gillette v. Jackson*, No. 20-60341, 2021 WL 4452783, at *1 (5th Cir. Sept. 28, 2021) (finding prisoner's appeals to other authorities outside the grievance procedures did not satisfy PLRA's exhaustion requirement); *Murshid v. Keys*, No. 1:20-cv-365-BWR, 2022 WL 4456245, at *7 (S.D. Miss. Sept. 23, 2022) (finding prisoner's oral complaints, letters to ARP, and phone calls by wife and lawyer were not proper exhaustion of MDOC's administrative remedy program). "Nor is a CID investigation a recognized substitute for exhaustion of

17

the ARP process." *Walker v. Hunt*, No. 1:17-cv-27-RHW, 2019 WL 1281247, at *4 (S.D. Miss. Mar. 20, 2019) (finding CID investigation and "mere fact that Plaintiff initiated [a] sensitive issue ARP" did not demonstrate prisoner's completion of MDOC's administrative remedy process, thereby failing to satisfy PLRA's mandatory exhaustion requirement).

A prison grievance system must be given "a fair opportunity to consider the grievance" and the "prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford*, 548 U.S. at 95. Plaintiff may not simply initiate the grievance process, but he must complete the process "in accordance with the applicable rules . . . as a precondition to bringing suit in federal court." *Id.* at 88. Plaintiff cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Id.* at 84. Plaintiff must pursue the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301 (citations omitted).

The record is devoid of any appeals of Plaintiff's initial grievances submitted in May of 2022, or any further steps taken within the administrative remedy program regarding these filings, or the claims presented in this case. The record demonstrates that an administrative remedy was available to Plaintiff. Finally, Plaintiff's informal complaints via conversations and letters are not

substitutes for proper exhaustion of Plaintiff's claims through MDOC's administrative remedy program.

F.     Conclusion

Defendants Green and Logan maintain that Plaintiff failed to properly exhaust his available administrative remedies prior to filing his Complaint. In support of their Motion [36], they submit competent summary judgment evidence indicating that Plaintiff did not properly proceed through each step of MDOC's administrative remedy program regarding the claims he asserts in this civil action. "Because [Plaintiff] fail[s] to come forward with specific facts showing there [is] a genuine dispute as to exhaustion," this Court is "required to dismiss his claims." *Jackson*, 763 F. App'x at 377 (citing *Gonzalez*, 702 F.3d at 788). Based on the foregoing, Defendants Green and Logan's Motion for Summary Judgment should be granted and this case should be dismissed without prejudice.[5]

## III. RECOMMENDATIONS

For the reasons stated, the undersigned recommends that:

1. Defendant Green and Logan's Motion [36] for Summary Judgment be GRANTED;

2. This case be dismissed WITHOUT PREJUDICE; and

---

[5] The summary judgment evidence also shows that Plaintiff has not exhausted his administrative remedies as to Defendant Jacob Childdress. A defendant who has not appeared can benefit from the defenses raised by other defendants who have appeared. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (holding non-appearing parties may "benefit from the appearing defendant's favorable summary judgment motion"). Therefore, Defendant Childdress may benefit from Defendants Green and Logan's Motion [36] for Summary Judgment and this entire civil action should be dismissed without prejudice. *See, e.g., Patel v. Haro*, 470 F. App'x 240, 245 (5th Cir. 2012) (affirming district court's decision allowing a non-appearing defendant "to benefit from the favorable disposition of the appearing defendants' summary judgment motion").

3. A final judgment be entered as the adoption of this Report and Recommendation that will dispose of all the claims against all Defendants.

## IV. NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party, within fourteen days after being served a copy of this recommendation. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained within this report and recommendation will bar that party from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court, except on the grounds of plain error. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services*, L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

This the 28th day of August, 2023.

          s/ *LaKeysha Greer Isaac*
          UNITED STATES MAGISTRATE JUDGE